# In re Thirty-Third Statewide Investigating Grand Jury

*George Matangos* and *Brian Perry*, for defendants.

FEUDALE, *J.*, April 9, 2012—Before this court is the Joint Motion to Quash Presentment filed by Defendants Graham B. Spanier, Timothy M. Curley and Gary Schultz (herein referred to as "Spanier," "Curley" and "Schultz").

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Thirty-third Statewide Investigating Grand Jury ("Grand Jury") conducted an ongoing investigation into the serial child molestation by Gerald A. Sandusky ("Jerry Sandusky"), a former assistant football coach at the Pennsylvania State University ("Penn State"). In June 2012, Jerry Sandusky was convicted of forty-five counts relating to criminal charges of child molestation and in

October 2012 he was sentenced to imprisonment for thirty to sixty years. As part of the on-going investigation, the Grand Jury expanded the scope of its investigation to include the involvement of Penn State Officials, namely Spanier, Schultz and Curley, in the handling of reports of Jerry Sandusky's activities.

On October 26, 2012, the Grand Jury Supervising Judge signed an Order Accepting Presentment No. 29 in which the Grand Jury recommended that charges be brought against Spanier, Schultz and Curley for Endangering the Welfare of Children, Obstructing the Administration of Law or Other Governmental Function and Criminal Conspiracy. Additionally, in its Presentment, the Grand Jury recommended that Spanier be charged with Perjury and Penalties for Failure to Report or to Refer. On November 1, 2012, a criminal complaint was filed against Spanier, Schultz and Curley, memorializing these charges.

On November 26, 2102, Spanier, Schultz and Curley filed a Joint Motion to Quash the Presentment As Defective for Relying on Attorney-Client Privileged Communication and Work Product. In response, on January 2, 2013, the Commonwealth filed its Answer to Motion to Quash Presentment. On January 18, 2013, Spanier, Schultz and Curley filed Replies to Commonwealth's Answer to Defendants' Joint Motion to Quash Presentment. Additionally, Curley filed a motion to Join Schultz's Reply to Commonwealth's Answer to Joint Motion to Quash and Spanier filed a Supplemental Motion to Quash Presentment, or in the Alternative, to Strike Defendant's Grand Jury Testimony.

On January 24, 2013, oral argument was held before this court to determine whether the joint motion to quash presentment should be granted. Counsel for Spanier, Schultz and Curley argued that presentment 29 should be quashed because of its reliance on information provided by Attorney Cynthia Baldwin when she testified before the Grand Jury. As follow-up to the oral argument proceedings, on January 31, 2013, Schultz and Curley filed defendants' Joint Bench Memorandum Regarding the Admissibility of Expert Testimony on the Attorney Standard of Care Issues Presented in Defendants' Joint Motion to Quash the Presentment.

## II. LEGAL ANALYSIS

Counsel for all parties raised several issues in both the written documents filed with this court and at oral argument. However, this court believes that the singular issue before this court involves the absence of jurisdictional authority for the Grand Jury Supervising Judge to quash a presentment after steps were properly taken to issue the presentment and to adhere to the statutory procedure following the submission of the presentment.

On December 27, 2010, the Honorable Ronald D. Castille, Chief Justice of the Supreme Court, granted the application of the Office of Attorney General to convene the Thirty-Third Statewide Investigating Grand Jury and with reliance on the Investigating Grand Jury Act, 42 Pa.C.S. § 4541, et seq., ordered the following:

The Honorable Barry F. Feudale, Senior Judge of the Court of Common Pleas, Eighth Judicial District, Northumberland County, Pennsylvania, is hereby

designated as Supervising Judge of the Thirty-Third Statewide Investigating Grand Jury. All applications and motions relating to the work of the Thirty-Third Statewide Grand Jury — including motions for disclosure of grand jury transcripts and evidence — shall be presented to said Supervising Judge...."

See Order at 217 M.D. 2010 (December 27, 2010). Under the Investigating Grand Jury Act (the "Act"), the Supervising Judge is specifically directed to supervise the activities of the Grand Jury. See 42 Pa.C.S. § 4542. Furthermore, it is well established that "[t]he supervising judge of the grand jury is responsible for upholding the rule of secrecy and deciding issues related of the disclosure of grand jury information." *Pennsylvania Grand Jury Practice* at 65. Thus, the Supervising Judge acts as the guardian of the vault of grand jury secrecy and must protect and oversee all "matters occurring before the grand jury." 42 Pa.C.S. § 4549(b).

One of the concluding matters before the grand jury is the issuing of a presentment. Once the grand jury completes its investigation and has determined that there is enough evidence presented against an individual, the grand jury directs the Commonwealth to prepare a presentment. See 42 Pa. C.S. § 4551(a). This presentment is then reviewed and voted upon by the grand jury. See *id.* If approved, the presentment is submitted to the supervising judge. See *Id.* Under the act, "the supervising judge shall examine the presentment, and if it is within the authority of the investigating grand jury ... the supervising judge shall issue an order accepting the presentment." *Id.* The supervising judge is also required under the act to select

the county where the criminal trial will take place after the attorney general initiates criminal proceedings. 42 Pa. C.S. § 4551(d). Then, the act is clear on the procedure following the acceptance of the presentment. "When the attorney for the Commonwealth proceeds on the basis of a presentment, a complaint shall be filed and the defendant shall be entitled to a preliminary hearing as in other criminal proceedings." 42 Pa. C.S. § 4551(e)[1]. Thus, the supervising judge plays a key role in the conclusion of the grand jury process and the presentment acts as the catalyst for instituting criminal proceedings outside the realm of the grand jury.

In the case at hand, the grand jury investigated the actions taken by Spanier, Schultz and Curley in regards to the Jerry Sandusky case and determined that the evidence presented supported the issuance of a presentment against these three individuals. The Commonwealth submitted Presentment No. 29 to the grand jury and after a majority vote approved it, the presentment was submitted to the supervising judge. The supervising judge then issued an Order Accepting Presentment No. 29 authorizing the attorney general of the Commonwealth to prosecute Spanier, Schultz and Curley as recommended in. The presentment by instituting appropriate criminal proceedings in Dauphin County, Pennsylvania. This concluded the supervising judge's role in the grand jury's investigation leading up to Presentment No. 29. Per the chief justice's order, as well as under the act, the remaining responsibility of the

---

1. The key term of, "shall be entitled to a preliminary hearing" is a definitive result which precludes any discretionary authority after the presentment is launched.

supervising judge is to maintain the secrecy by handling any motions for disclosure of transcripts and evidence involved in the grand jury's proceedings. Neither the chief justice's order nor the act purport to expand the supervising judge's authority beyond the statute and thus upon the signing of the Order Accepting Presentment No. 29, the supervising judge's continuing role in this case is to maintain secrecy and adjudicate disclosure issues. It is not within the supervising judge's jurisdiction to entertain the join motion to quash presentments put before this court.

## III. DISCUSSION

Due to the novel issues presented, and lack of specific statutory or case law precedent and/or guidance this judge has struggled with how to fully and fairly address the motions argued (on January 24, 2013) as well as the pending motions to discover testimony in advance of what is authorized by the law. Such is not a reflection of uncertainty about this courts lack of jurisdiction to rule on the motion; but how to do so without appearing to pass the buck.[2]

Another significant concern was my perception that not only do I as a grand jury judge (for the reasons explained in the legal analysis)[3] clearly and unequivocally lack

_____

2. "Pass the buck" – evade responsibility by passing it on to someone else, herein the Honorable Todd Hoover. See www.phrase.org. I will address the motions for discovery later in this decision and final order.

3. Once again I commend and publicly acknowledge the invaluable assistance of attorney Brianna and Michael Apfelbaum. This daughter and father team have rendered invaluable assistance to this court. I also thank Supreme Court Administrator Zyg Pines who authorized this grand jury judge to retain legal research and writing assistance at a rate of $20 an hour. I take great pleasure in pointing out that (with one exception) over

jurisdiction to decide the motions to quash; there is a distinct possibility that I may be a potential witness in subsequent proceedings before the trial court as to the issues extant.

Finally, my dilemma is further complicated by my statutory role to preserve secrecy. My resolution of these issues as reflected herein, is how I (perhaps erroneously) have decided to resolve such in a way that explains, but does not intrude, on the important determinations that must or may be made by the Honorable Todd Hoover and/ or the Pennsylvania Supreme Court.[4]

Simply stated, it is this courts view that the various charges against Spanier, Curley, and Schultz reflect their *alleged* (emphasis added) failure to report Sandusky to the proper authorities when an eyewitness account came to their attention in 2001. Subsequent thereto, they later allegedly lied to investigators, the grand jury (and even arguable PSU Chief Counsel Baldwin) about what they knew, when they knew it, and what they did or did not do about it (alleged unlawful acts of omission/commission).

---

the three years of their service they have only requested compensation on one occasion. I am fortunate to have the services of such able and generous lawyers who help me facilitate the administration of justice.

4. Since my only substantive decision is relevant to the lack of jurisdiction (which is not appealable since it is not a final order) what I say, assert, claim is clearly not law of the case nor should it even be arguably persuasive; since I have not set forth the factual basis upon which all of my assertions are based. If need be, such will be done on the record if I am called as a witness. However, I do note that my assertions are based on a careful review of an extensive record over the last two months. As to the defendant's motions for certain discovery of testimony, etc., I am going to order such be turned over to Judge Hoover if "he" requests I do so, even if it is contrary to the specific statutory and case law. Fundamental fairness to the defendants and an informed Judge support my position even though the office of attorney general may disagree.

Again, simply stated it is the view of counsel for Spanier, Curley and Schultz that this court, Judge Hoover and/or the superior and/or supreme court should dismiss all the counts against all these defendants. Such is based on their assertions that then PSU General Counsel (Chief Legal Officer and Vice President Cynthia Baldwin) were misrepresented by Ms. Baldwin who "represented" them before the statewide investigative grand jury. In addition, counsel for each of the defendants asserts that Baldwin violated the attorney/client and/or work product privilege when she provided information and/or testified against the three defendants before the statewide investigative grand jury.

We assume arguendo (as requested by the three defendants) that this court should have decided the present motion before it and granted the defendants' request to dismiss all the charges pending against them. In consideration of such, which is based on an extensive and careful review of a records that encompasses testimony, judicial colloquies, inquiries, and rulings relevant to attorney Baldwin's participation in the Sandusky et al investigation; as well as the colloquies and testimony of Spanier, Curley, Schultz and Baldwin; this Judge sets forth the following as an explanation as to why it believes the assertions and motions of counsel for the defendants lack merit and the motions to quash should not be granted:

1. As reflected in the earlier legal analysis it is clear and unequivocal that this court lacks jurisdiction to grant the relief requested. However, the supreme court may disagree.

2. Jurisdiction cannot be placed before this court merely because the defendants' motions are entitled motion to quash "presentments".

3. Jurisdiction cannot be placed before this court merely because the office of attorney general does not object to or challenge the filing of the motion, briefs, and presentation of argument. Simply stated, jurisdiction that does not exist cannot be stipulated to and/or conferred in the absence of the law.

4. The lack of jurisdiction before this court is not a final order and thus while appealable; lacks merit in fact and law.

5. The lack of jurisdiction of this court is not a final order since the motion to quash a presentment should and can be filed as a writ of habeas corpus to dismiss the complaints filed subsequent to the presentments. Such should/could be filed in accordance with the rules of criminal procedure as part of an omnibus motion to dismiss the complaint and/or one or more of the pending charges against one or more of the defendants.

6. The motion to disallow the testimony of Cynthia Baldwin before the assigned Magisterial District Judge (with all due respect to learned counsel and/or the presiding Magisterial District Judge and/or Presiding Judge) is itself problematic for the following reasons:

a. The assumption that OAG will, or needs to call, attorney Baldwin in support of a probable cause determination in support of the pending charges against all three defendants; is arguably premature.

b. The complications of grand jury secrecy as to defense counsel's request for the testimony of attorney Baldwin prior to trial[5].

7. While the grand jury judge will not grant the defendants' outstanding motions for the transcripts of Cynthia Baldwin's testimony before the grand jury, and the colloquy with the court before she testified (since such are violations of the law) absent a stipulation agreeing to such by OAG and approval of this court; this court would entertain the following resolution:

a. A formal request by the trial judge (Honorable Todd Hoover) that the provision of the testimony of attorney Baldwin and the prior colloquy is necessary to the administration of justice and in consideration of such this court would:

i. Turn over the sealed transcript of the testimony of Baldwin and the colloquy prior thereto to Judge Hoover.

ii. Agree that such will be sealed and not made public except to counsel for the defendants at a time either agreed to by counsel for OAG and the defendants, or upon approval of the grand jury judge.

iii. At the time of said *in camera* and/or preliminary

---

5. See Pa.R.Crim.P. 230(B)(2). When a witness in a criminal case has previously testified before an investigating grand jury concerning the subject matter of the charges against the defendant, upon application of such defendant the court shall order that the defendant be furnished with a copy of the transcript of such testimony; however, such testimony may be made available *only after the direct testimony of that witness at trial*. (*Trial* — not preliminary hearing) emphasis added.

hearing the trial judge (who may choose to hold said in camera hearing himself or assign another member of the Dauphin County Bench) will determine whether to grant a writ of habeas corpus and dismiss some or all the charges against one, more or all of the defendants based on the averments as to alleged violations of the attorney-client privilege supporting such an extraordinary remedy and/or granting defendants outstanding motions in full or part to disallow the testimony of attorney Baldwin in advance of the preliminary hearing.

8. In the event counsel for the defendants, OAG, and/or the trial court deem it necessary to all the grand jury judge to testify at any habeas corpus hearing or a hearing to preclude he testimony of attorney Baldwin all of the aforegoing should be advised that:

a. Based on this courts review of all of the transcripts of testimony of the efendants, all the record appearance of attorney Baldwin whether before the grand jury with one or more defendants, or arguing legal issues before this judge or Judge Jackson;[6] this court believes there is no factual basis in the record nor legal basis to dismiss the presentment and/or complaints.

b. When attorney Baldwin appeared before this court with witness Curley and Schultz, the court was aware attorney Baldwin was general counsel, Chief Legal Officer and vice president of PSU.

---

6. This Judge was off sick for approximately three months and a review of the record reflects Judge Ricardo Jackson did preside over one proceeding involving alleged non-compliance by PSU with prior subpoenas and orders of this court relevant to the provision of information regarding the investigation of Mr. Sandusky.

c. Based on this court's experience with the role of general counsel (albeit limited) the court did not perceive any issue that would require any special inquiry as to the role of attorney Baldwin's appearance on behalf of Curley and Schultz.[7]

d. On the same day that Curley and Schultz appeared with Baldwin, Joe Paterno appeared with attorney Joshua Lock and his son attorney Scott Paterno.

e. In all candor at the time Joe Paterno appeared with attorney Lock and his son, I was uncertain as to why Mr. Paterno was not represented by Attorney Baldwin. I perceived he (Paterno) along with Curley and Schultz (and later Spanier) were senior executives employed and usually represented by such corporate counsel.

f. At the time I was not advised, nor did I have any reason to believe, Mr. Curley and/or Schultz were targets of the investigation.

g. At the time of their testimony I assumed Curley and Schultz were appearing voluntarily (i.e. there was no motion to quash the subpoena) pursuant to the subpoena (actually as I write this I am not even sure if a subpoena was issued for Curley, Schultz or Spanier or whether they appeared voluntarily at the request of SDAG Jonelle Eshbach or CDAG Frank Fina.

h. Many witnesses (and even lawyers unfamiliar with

7. Generally it has been this courts experience that general counsel hired by a corporation as an employee officer is responsible for how the corporation's legal matters are handled. Whether a private or public corporation, the general counsel usually offers legal advice to the board of directors, CEO/President of the corporation and other senior executives.

grand jury practice) are unaware that a grand jury judge is not present in the grand jury room when the witnesses testify.

i. I rarely read the transcripts of witnesses who do testify, (unless I am advised or become aware there is a legal issue that may require such, or suggest such is prudent).

j. The reading of all transcripts by a grand jury judge is neither required, nor is it a wise utilization of judicial resources.

k. At the time Curley, Schultz, Paterno, and Spanier testified, I had no reason to suspect they were being called for any reason other than to move the investigation of Sandusky along. The only issue I was aware of at the time of the testimony of the witnesses Spanier, Curley, Schultz and Paterno; was that the office of attorney general was concerned that the subpoenas and/or court orders to PSU for information relating to Mr. Sandusky was either not being complied with, or was being unduly delayed so as to impact the ability of the OAG to investigate Mr. Sandusky. I and Judge Jackson entered orders relevant to said concerns.

l. I later discerned that Joe Paterno was not a senior executive and arguably that was a possible reason why attorney Baldwin did not appear on his behalf.

m. It is the practice of OAG to at times meet with witnesses in advance of the witness's testimony either prior thereto, or at the day of their appearance before the grand jury.

n. Based on such, on occasion I am apprised there may be a legal issue regarding the witness (i.e. 5th amendment, attorney-client, multiple representation, marital privilege, etc.) that I may need to address in advance of the testimony.

o. No such issues(s) were brought to my attention by OAG, Attorney Baldwin, Attorney Lock nor by any of the witnesses.

p. Based on such, I proceeded as if all the witnesses had counsel of their choosing and there were no legal issues that needed to be addressed by the grand jury Judge.

q. The only issue that I perceived but did not raise (nor was it raised by any member of OAG) was that of the multiple representation by attorney Baldwin as to Curley and Schultz. While I had no reason to believe there was such an issue, the matter of multiple representation is a sore point with this Judge since the case of *Pirillo v. Takiff*, 462 Pa. 511, 341 A.2d 896 (1975) and *In Re: Bucks County Investigating Grand Jury*, 580 PA. 365, 861 A.2d 876 (2004) which set forth the standards regarding such multiple representation such seem to be honored in its breach, and the wishes of witnesses to have counsel of their choosing, which has been given the conflicted imprimatur of our appellate courts, at times seems contrary to the facilitation of a grand jury investigation and secrecy.

r. Despite such, and despite being a former public defender, it is not this judge's practice to "get down into the arena" and raise issues sua sponte absent a

written or verbal motion, or a very strong factual basis suggesting I should do so in the interest of justice.

s. When CDAG Barker called the case indicating "we have some witnesses to be sworn, Mr. Curley and Mr. Schultz." I stated, "represented by" and Ms. Baldwin stated "my name is Cynthia Baldwin, General Counsel for Pennsylvania State University." I asked "will you be providing representation for both of those identified witnesses." Ms. Baldwin responded, "Gary is retired but was employed by the University and Tim is still an employee."

t. I asked no further questions nor was any further information regarding the representation provided by OAG or Ms. Baldwin.

u. I proceeded to give the standard colloquy regarding rights and responsibilities to witnesses Curley and Schultz and also at a later date, Spanier.

v. It is my practice and such occurred as to Curley, Schultz, Spanier and Paterno (as, well as all other witnesses in all proceedings before the grand jury) to also explain that "if a witness answer untruthfully he may be subjected to prosecution for perjury which is punishable under the Crimes Code of Pennsylvania" and I always also state even though it's not a part of the standard colloquy "it's (perjury) a very serious offense. It's a felony.

w. In hindsight, perhaps I erred in not asking follow up questions about the role of corporate counsel Baldwin. I regret and perhaps committed error in not asking any

follow up questions but while I am unaware what the response would have been, I fail to discern how such would persuade me at this stage why presentments should be dismissed

x. Subsequent to the testimony of Spanier, Curley, Schultz and Paterno, I did some research on the role of corporate counsel such as Baldwin.

y. My research included an article entitled "The discreet roles of general counsel" by Debra A. DeMott. Therein, I learned that a "contemporary general counsel often occupies other roles as well (besides advising the board of directors and senior executives such as Spanier, Curley and Schultz); each complex and additionally interlinked in many ways." The article further noted general counsel's position has often been characterized as ambiguous. A characterization that suggests that not all occupants of the positions succeed in balancing its multiple roles in either a professional or socially satisfactory manner". The article concluded by indicating "some general counsel appear to have erred in a basic respect by misidentifying their clients as individual members of the corporation senior management in contrast to the corporate organization, *an error shared by members of senior management* (emphasis added).

z. After reviewing all of the relevant transcripts it was also my impression that attorney Baldwin lacks substantive experience with grand jury and/or criminal investigative matters. My observation was related to the issues involving securing compliance with grand jury

subpoenas and court orders and the apparent failure to engage in aggressive efforts beyond alleged inquiries of Spanier, Curley, and Schultz as to evidence/documents relevant to the Sandusky investigation.

aa. After reviewing all of the relevant transcripts and documents related to the legal issues extant, it was my view that at worst attorney Baldwin arguably knowingly failed to comply with Rule of Professional Conduct 3.3- Candor Toward the Tribunal.[8]

bb. The assertion in paragraph an was mitigated when I subsequently learned that Mr. Freeh prior to the issuance of his report (report of the special investigative counsel regarding the actions of the Pennsylvania State University related to the Child Sexual Abuse Committed by Gerald A. Sandusky-July 12, 2012) acquired emails and other information in his investigation involving Spanier, Curley and Schultz, that reflected that said witnesses Spanier, Curley and Schultz allegedly withheld relevant evidence from investigators, the grand jury, *and Attorney Baldwin,* as well as allegedly lied before the grand jury. (emphasis added)

cc. Even if attorney Baldwin exercised poor judgment and/or improper ethical conduct in her handling of the Sandusky investigation; such does not (in this courts view) provide a defense to any crimes.

dd. A careful review of the testimony of attorney

---

8. "A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer". Rule 3.3 (a)(1).

Baldwin before the grand jury (as structured/based on the earlier colloquy) reflects that Baldwin's testimony did not (in this courts view) violate any attorney-client or work product privilege.

ee. Even if this court were to infer that such as violation occurred, this court would not quash the presentments nor grant a writ of habeas corpus. The defendants' remedy, if any, to their averments regarding alleged violations of attorney-client privilege and work-product privilege; belong before the attorney disciplinary board or a civil court and not before any grand jury or trial court judge presiding in these criminal cases.

ff. In this court's view, all properly admitted evidence by the trial judge including any alleged acts of omission/commission by attorney Baldwin should be fairly and fully placed before the only appropriate tribunal; which in this case is a jury properly empaneled in the Court of Common Pleas of Dauphin County.

gg. Finally and in conclusion, this court notes that Spanier, Curley and Schultz are "highly educated" men who had positions of considerable influence at PSU as well as inferentially, knowledge about important events that impact the reputation of the university; and it therefore strains credulity to infer that they were somehow deluded or misrepresented by attorney Baldwin.

hh. In the view of this court, the motions extant are in effect legal chimera's (concepts perceived by this judge as legally creative, imaginative but implausible

and serve only to delay the administration of justice in this simple case involving whether Spanier, Curley, and Schultz did or did not commit the crimes alleged.

## IV. CONCLUSION

Defendants Spanier, Schultz and Curley seek to have presentment No. 29 quashed; however, this court has carefully considered the jurisdictional issue which can't be waived or stipulated to, and has concluded that the Joint Motion to Quash Presentment was inappropriately placed before this court. Once the supervising judge signs the order accepting the presentment and authorizes the attorney general for the Commonwealth to initiate criminal proceedings, the trial court (the Honorable Todd Hoover) becomes the overseer of the pending trial issues and the supervising judge continues the important role as the guardian of secrecy with regard to disclosure of grand jury transcripts and evidence. Simply stated, the grand jury judge no longer has jurisdiction over this case since the defendants were arraigned and are awaiting a preliminary hearing. In the event I am wrong and the grand jury judge does have jurisdiction; then I have set forth in my discussion why I would deny the motion to quash. I believe I have done so without implicating secrecy (i.e. revealing the content of attorney Baldwin's testimony before the grand jury) but have explained most of my reasons for indicating why I would deny the motions. Such was done in fairness to the defendants, who are on notice to my analysis (in the event I am called as a witness) and also to avoid delay which is also fair to the many actual and/or alleged victims of the alleged acts of omission/commission by Spanier, Curley, and Schultz.

As to Attorney Baldwin, I have explained why her alleged acts of commission/omission are not dispositive as to being a legally persuasive basis to dismiss one or more of the charges. Whether defendants' assertions should be the subjects of disciplinary proceedings and/or some type of civil action, is not within this or even the trial courts purview.

Finally, my review of the testimony of Attorney Baldwin before the grand jury persuaded me (perhaps not Judge Hoover or other members of the Dauphin County Bench, or the Superior or Supreme Court) that her testimony was circumspect and circumscribed. It was not a violation of the attorney-client privilege, but rather was related to her belated awareness of the commission of alleged criminal acts and was in accordance with her responsibilities as an officer of the court. Finally, attorney Baldwin testified as approved by her then client (PSU) the organization for which she was employed.

We therefore enter the following order:

## ORDER

And now, April 9, 2013, in consideration of the attached opinion, it is ordered and directed that:

1. The motions of defendants Spanier, Curley and Schultz to quash the presentment are denied;

2. The motions to quash the presentment or strike defendant Spanier's grand jury testimony on the grounds of attorney Baldwin's alleged conflicts of interest are denied;

3. The motions for disclosure of various documents including transcripts of attorney Cynthia Baldwin's testimony before the grand jury and the colloquy with the court before she testified are denied;

4. As reflected in the analysis within the opinion, the motions to quash the presentment, (which never should have been filed with the grand jury judge), as well as the courts assertions that its findings and reasons therefore should be fully disclosed to the defendants as a matter of fundamental fairness; and the courts careful review of the content of the opinion as not implicating secrecy (notwithstanding the courts proposal to potentially allow the transcripts of attorney Baldwin's testimony and colloquy to be disclosed) this opinion and order will not be sealed and may be released to all those cc'd in the order and other interested parties.